United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 13, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 01-10425

---

JOE LEE GUY,

Petitioner – Appellant,

versus

JANIE COCKRELL, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL,

Respondent – Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before JONES, EMILIO M. GARZA, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Petitioner – Appellant, Joe Lee Guy appeals the district court's denial of his 28 U.S.C. § 2254 application and grant of the Government's motion for summary judgment. We granted a certificate of appealability on whether Guy received ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984) as a result of his legal team's investigator's alleged conflict of interest arising from his relationship with French Howell, the murder victim's mother. In other words, we must determine whether failure to "investigate thoroughly" Guy's mitigation evidence resulted

from this alleged conflict. See Wiggins v. Smith, No. 02-311, 2003 WL 2147222, *10 (June 26, 2003). For the reasons that follow, we conclude that the record is insufficient to make such a determination. Thus we reverse and remand to the district court for an evidentiary hearing.

FACTUAL AND PROCEDURAL BACKGROUND

In early 1993, Joe Lee Guy ("Guy") was approached by Thomas Howard ("Howard") and Richard Springer ("Springer") with a plan to rob the Howell Grocery Store that was owned and operated by Larry Howell ("Larry") and his elderly mother, French Howell ("French"). The plan included murdering Larry, French, and any other potential witnesses. Guy agreed to assist in the robbery. On March 25, 1993, Howard and Springer entered the store wearing ski masks while Guy kept watch outside the front door. As planned, after hearing gun shots, Guy entered the store to help retrieve money out of the cash register, but when he attempted to do so, the cash register would not open. Springer grabbed the register and carried it outside. It was found across the street from the store with approximately ten thousand dollars inside of it. French survived the shooting and called 911. When the police arrived, Larry was lying on the floor – shot once in the forehead and four times in the chest and back. Larry died shortly after arriving at the hospital. Although French survived she could not identify her assailants.

Guy, Howard, and Springer were later apprehended and charged with the murder of Larry in the course of a robbery. Each defendant was tried separately with Guy being first. Richard Wardroup ("Wardroup") was appointed to serve as Guy's trial counsel. He chose not to seek co-counsel, but requested that Frank SoRelle ("SoRelle"), an investigator with no capital case experience, be appointed to assist him in preparing for trial. Wardroup gave SoRelle the responsibility

2

of investigating the facts of the case, including interviewing potential mitigation witnesses. SoRelle also drafted motions, communicated with opposing counsel, and communicated with the trial court on behalf of Wardroup. At trial, the Government produced an eye-witness who testified that he saw Guy standing outside of the store at the time of the robbery. Another witness testified that she sold ski masks to Guy, Howard and Springer two days before the robbery. The Government also presented evidence establishing that Guy's fingerprints were on the cash register found across the street from the store. The jury found Guy guilty of capital murder.

During the penalty phase of trial, Wardroup presented four lay witnesses. None of these individuals knew Guy well, nor were they close friends or relatives. These witnesses gave vague and confusing testimony that failed to present Guy as a decent human being. Nevertheless, some of Guy's relatives and close friends were available to testify on his behalf during the penalty phase of trial, including his mother and aunt, but were not asked to do so. In contrast, the State presented sixteen law-enforcement officials, including a Judge, who testified without explanation that Guy was "bad" despite that Guy has no history of violent behavior. During the trial, SoRelle developed a conflicting relationship with French, the victim's mother, and he was ultimately named the sole beneficiary of her estate only six months after Guy's trial. French died seven months later in April 1995.

In April 1994, Guy was convicted for the offense of murdering Larry during the course of a robbery. Even though Guy was by far the least culpable of the three defendants, he was the only defendant sentenced to death. The Court of Criminal Appeals affirmed Guy's conviction and sentence, and Guy did not seek certiorari review. The trial court conducted an evidentiary hearing on Guy's state habeas petition, issuing findings of fact and conclusions of law including that "[t]rial

3

counsel for Joe Lee Guy was not ineffective." The Texas Court of Criminal Appeals adopted the trial court's findings and conclusions and denied Guy's petition for habeas relief on January 27, 1999.

On June 9, 2000, Guy filed a federal habeas petition in the Northern District of Texas. Although the Texas state courts were not presented with the specific issues presented in Guy's federal habeas petition, the Government expressly waived any defense based on the failure to exhaust state remedies. The district court granted Guy's motion for discovery, which included requests for the issuance of subpoenas for Wardroup and SoRelle to attend and testify at a hearing scheduled on Guy's habeas petition. On October 25, 2000, the Government filed a motion for summary judgment.

The district court scheduled an evidentiary hearing for November 20, 2000. During the hearing, Guy did not call Wardroup or SoRelle to testify, nor did he present any live testimony. Instead, Guy chose to rely on the documentary evidence attached to his habeas petition including, depositions, affidavits, and certain attorney/investigator files and records submitted to the district court for in camera inspection. As part of its supporting evidence, the Government attached counter affidavits and depositions to its motion for summary judgment. No live testimony was presented by the Government. As a result, on November 20, 2000 the district court had before it, among other documents, four affidavits from SoRelle containing conflicting testimony about whether his relationship with French prejudiced his work on Guy's defense, and two depositions from Wardroup. The district court also had before it an affidavit from the "hold out" juror who explained that he may have voted against the death penalty had he heard more about Guy's background. Guy also provided affidavits from members of his family, including his mother and aunt, explaining that they would have testified about Guy's background had the defense team asked. After hearing the attorney arguments and considering the paper record, the district court denied Guy's petition for habeas relief, granted

4

the Government's motion for summary judgment, and later denied a certificate of appealability ("COA"). On July 23, 2003 this Court granted a COA on Guy's ineffective assistance of counsel claim.[1]

DISCUSSION

Typically, when reviewing a denial of a petition for habeas corpus "this court reviews the district court's factual findings for clear error and its disposition of pure legal issues and mixed issues of law and fact de novo." Haley v. Cockrell, 306 F.3d 257, 263 (5th Cir. 2002). When reviewing a motion for summary judgment, this Court reviews a district court's factual and legal conclusions de novo to determine whether there are genuine issues of material fact. See Leasehold Expense Recovery, Inc. v. Mothers Work, Inc., 331 F.3d 452.455 (5th Cir. 2003); see also FED. R. CIV. P. 56(c). This case, however, comes to us in an atypical procedural posture. In the same opinion and order, the district court denied Guy's petition for habeas relief which ordinarily requires a clear error review of the factual determinations and simultaneously granted the Government's motion for summary judgment which ordinarily requires de novo review.

In the present case, the district court heard no live testimony, but rather heard arguments and reviewed affidavits, depositions, and other related documents. Moreover, as Guy's ineffective assistance claim based on SoRelle's conflict was not before the state habeas court, and as the Government waived its exhaustion of state remedies defense in this case, there is no state court record

---

[1]Guy also sought a COA on whether his Sixth Amendment right to counsel was violated due to Wardroup's drug and alcohol abuse during trial and whether his Fourteenth Amendment right to due process was violated because the Government produced fundamentally unreliable expert testimony regarding future dangerousness. We denied a COA on these two issues.

nor are there factual determinations subject to substantial deferential review consistent with 28 U.S.C. § 2254(d)(1). Given these circumstances, it appears that the district court reviewed summary judgment type evidence, and therefore, made a summary judgment determination. Thus, we will review the district court's factual and legal conclusions de novo, reviewing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" to determine whether "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

The district court applied the Strickland v. Washington, 466 U.S. 668 (1984) analysis to Guy's ineffective assistance of counsel claim based on his legal team's failure to investigate mitigation evidence. See Bell v. Cone, 535 U.S. 685, 698 (2002) ("[E]ven when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."(internal quotation marks and citations omitted)).To determine whether the defendant received ineffective assistance of counsel, Strickland requires analysis under a two pronged test. First, the defendant must offer proof "that counsel's 'representation fell below an objective standard of reasonableness.'" Bell, 535 U.S. at 695 (quoting Strickland, 466 U.S. at 688). In order to review this first prong, the Supreme Court recently instructed that "we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the defendant's] background *was itself reasonable*." Wiggins v. Smith, No. 02-311, 2003 WL 21467222, *8 (U.S. June 26, 2003); see Williams v. Taylor, 529 U.S. 362, 396 (2000) (instructing that trial counsel has an "obligation to conduct a thorough investigation of defendant's background"). Second, the defendant must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

6

proceeding would have been different." Bell, 535 U.S. at 695 (internal quotation marks omitted); see Wiggins, No. 02-311, 2003 WL 21467222 at *16 ("In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence.") Thus, proof of both deficient performance and prejudice are required. Id.

In his habeas petition, Guy raised several Sixth Amendment claims. Guy's first claim for relief was that SoRelle's relationship with French produced a conflict of interest which adversely affected his representation. Specifically, Guy complained that "SoRelle and Wardroup had an irreconcilable conflict of interest with their client Guy, and rendered ineffective, and ultimately disastrous, service due to that conflict." Guy's second claim for relief was that Wardroup's inadequate supervision of SoRelle during the trial constituted ineffective assistance of counsel. Specifically, Guy complained that "Wardroup's failure to collect and present relevant mitigating evidence constitutes ineffective assistance of counsel. ... As a result of SoRelle's disloyalty and Wardroup's incapacity, the jury never heard from [Guy's] family."[2]

On the conflict of interest claim, the district court ruled that Guy did not present sufficient evidence to prove that there was a conflict of interest produced by SoRelle's relationship with French. The district court found, among other things, that "there is no credible evidence to prove that SoRelle ever affirmatively worked during pretrial investigation or during trial, to undermine Guy's defense in an effort to obtain or inherit the estate of Mrs. Howell." In its analysis of Guy's challenge to Wardroup's performance in his ineffective assistance of counsel claim, the district court rejected

_____

[2]Guy presented an affidavit of one juror who indicated that he probably would not have voted the way that he did on the special issues had he been presented with mitigation witnesses to humanize Guy. The district court's opinion did not address this juror's affidavit. Upon remand, its probative worth may be determined as deemed appropriate by the district court. We express no opinion, however, on its probative value or on the district court's consideration of this evidence.

7

Guy's assertion that Wardroup did not provide adequate supervision to SoRelle, thereby producing deficient performance and prejudice. The district court did not directly address whether SoRelle's failure to investigate mitigation evidence resulted from his admitted compromising relationship with French or whether it was a conscious decision that was based on sound trial strategy. We review the district court's conclusions <u>de novo</u> reviewing all of the pleadings that were before the district court to determine whether there are genuine issues of material fact to overcome a grant of summary judgment on Guy's habeas petition. In the present case, there are several disputed, material facts regarding proof of deficient performance in the preparation of the penalty phase of Guy's trial and subsequent prejudice.

"In assessing [SoRelle's] investigation, we must conduct an objective review of [counsel's] performance, measured for 'reasonableness under prevailing professional norms' which includes a context dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" <u>Wiggins</u>, No. 02-311, 2003 WL 21467222 at *8 (internal citations omitted). On the purely paper record in the present case, we cannot measure the reasonableness of SoRelle's or Wardroup's decisions primarily because SoRelle presents contradictory statements of his perspective during the penalty phase of Guy's trial. For example, SoRelle produced at least four affidavits, we found three, one of which specifically admits to the conflict and then maligned the overall representation that Guy received from both SoRelle and Wardroup. In his July 2000 affidavit, SoRelle explained: "I also know now that my compassion for and the relationship I developed with Ms. French Howell created a conflict of interest. That conflict at times caused me to conduct my investigation in a way that was damaging to Joe Lee Guy getting a proper defense." In a later affidavit, SoRelle explained: "The only conflict I had was emotional because Mrs. Howell had described to me what it was like to watch her

8

son as he lay dying and to not be able to help him." These two statements from SoRelle alone produce a genuine issue of material fact regarding the nexus between deficient performance and prejudice. The paper record does not readily reveal when SoRelle's relationship with French began and how that relationship affected SoRelle's performance. The timing and intensity of SoRelle's relationship with French is material to a determination of whether Guy's defense was prejudiced. Direct testimony from SoRelle would better resolve questions of his credibility as well as his contradictory statements.

The record reveals a four page handwritten list of potential mitigation witnesses and that Guy had a list of mitigation witnesses to give to SoRelle and Wardroup.[3] It is unclear, however, who prepared t he handwritten list of potential mitigation witnesses found in the record and whether SoRelle interviewed any of those witnesses. The record contains evidence that SoRelle interviewed relevant mitigation witnesses. The record, however, contains equally compelling evidence that SoRelle did not interview the most obvious mitigation witnesses, including Guy's mother and aunt. It is not readily apparent the basis on which these witnesses were not interviewed or whether these witnesses were in fact, interviewed. See Wiggins, No. 02-311, 2003 WL 21467222 at *9 (admonishing that counsel's basis for limiting its investigation into readily available mitigation evidence was unreasonable).

Given the unique circumstance of this case – i.e., that there is no tribunal from which we can measure testimony – appellate review of these disputed issues can be better performed following the

---

[3]During a March 1994 interview with SoRelle and Wardroup, Guy asked what to do about his character witnesses and revealed that he has a list of them:
Guy: What can I do about my character witnesses?
Wardroup: Have you given us a list?
Guy: I have it at my house. I don't know all the telephone numbers.

district court's credibility assessment of the live witnesses. See id. (relying on the state trial judge's credibility determinations based on live testimony).[4] Moreover, the Supreme Court's recent emphasis on ineffective counsel claims indicates that we must be accurate and use care in reviewing Guy's claim. See id. at *8 (finding counsel rendered ineffective assistance in violation of the Sixth Amendment because "counsel's decision to limit the scope of their investigation into potential mitigation evidence" was unreasonable); Bell, 535 U.S. at 697-98 (evaluating counsel's "failure to adduce mitigating evidence" during the penalty phase of trial). Williams, 529 U.S. at 395-99 (granting habeas relief to petitioner because counsel's failure to present mitigation evidence during the penalty phase of trial constituted ineffective assistance of counsel); see also Strickland, 466 U.S. at 690-91 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.").

The Supreme Court requires a sufficient record for a reviewing court to rule on ineffective assistance of counsel claims like this one. Roe v. Flores-Ortega, 528 U.S. 470, 487 (2000) (remanding due to the inadequacy of the record); see Wiggins, No. 02-311, 2003 WL 21467222 at *13 (reviewing the entire record to determine that "as a whole [it] does not support the conclusion that counsel conducted a more thorough investigation than the one we have described."); see also Marshall v. Hendricks, 307 F.3d 36, 106 (remanding because "there is no record before us as to what preparation or investigation, if any, was performed by counsel in anticipation of the penalty phase, nor is there any record of why counsel chose not to undertake the investigation that we know he did

---

[4]This is not to say that a district court must always conduct an evidentiary hearing if the state waives exhaustion and agrees to litigate habeas claims in the first instance in federal court. Our holding today is that the summary judgment procedure did not suffice here because the affidavits and evidence on file raised genuine, material fact issues that could not be resolved without adversarial testing.

not – *e.g.*, why he chose not even to contact many of [the defendant's] proffered mitigation witnesses"). As the Supreme Court recently instructed, "[i]n assessing the reasonableness of an attorney's investigation ... a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." Wiggins, 2003 WL 21467222 at *11. The record contains informative but conflicting evidence about what was known to counsel and to SoRelle in preparing for the penalty phase of trial. For example, during a deposition of Wardroup, the Government stated that what was known to SoRelle during preparation was entirely contained on his computer and turned over to Guy's habeas counsel. On the other hand, during oral arguments, the Government explained that the record is missing certain files relating to SoRelle's investigation. It also bears repeating that in the present case, there has been no witness testimony from which a trial court can make credibility decisions. On this paper record, it is difficult for us to discern the quantum of evidence already known to SoRelle and to decide whether the known evidence would have led him or Wardroup to investigate further. Determining what happened, when it happened, and how it happened can be better ascertained from a full hearing. We express no opinion on what the final resolution of the facts or of Guy's habeas petition may be, following a full hearing.

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's decision regarding Guy's claim of ineffective assistance of counsel during the penalty phase of his trial due to SoRelle's alleged conflict of interest and REMAND for further proceedings consistent with this opinion.

REVERSE and REMAND.