# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 7, 2023

Lyle W. Cayce
Clerk

_____

No. 21-20579

_____

Fidel Flores,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-2252

_____

Before King, Jones, and Duncan, *Circuit Judges*.

King, *Circuit Judge*:

A Texas jury found Fidel Flores guilty of aggravated sexual assault of a child under the age of six, and he was sentenced to forty-five years' imprisonment. Flores challenged his conviction both on direct appeal and through state habeas proceedings, but the Texas courts denied his requests for relief. The United States District Court for the Southern District of Texas denied his subsequent federal habeas petition and his request for a certificate of appealability. This court granted Flores' application for a certificate of appealability on one issue: whether trial counsel rendered unconstitutionally

ineffective assistance by failing to object to expert and lay opinion testimony regarding the truthfulness of G.P., the complainant. For the reasons articulated herein, we AFFIRM the district court's denial of Flores' habeas petition.

## I.

## A.

In October 2012, G.P., the complainant, told his mother that he was experiencing rectal pain, and she twice took him to his pediatrician, Dr. Ciro Porras, for examination. During the second visit, G.P. told the pediatrician that Flores—G.P.'s uncle—had "put a stick in his bottom several times." Upon hearing this, Dr. Porras concluded that G.P. had been sexually abused and reported the abuse to police and Child Protective Services. Flores was charged with a single count of aggravated sexual assault of a child.

At trial, the State presented testimony from numerous witnesses. G.P.'s mother testified that Flores previously lived with her, her husband, and G.P. in a one-bedroom apartment and, beginning in 2011, would babysit G.P. on the days that she worked. Around April 2012, G.P. began complaining of rectal pain and started exhibiting anger and aggression toward Flores. In May 2012, G.P. told his mother that he did not want to stay with Flores and that Flores was hurting him.

G.P.'s mother arranged for alternate childcare but, fearing deportation and lacking the resources to move, did not report the abuse. In September 2012, however, Flores picked up G.P. from school because his normal caretaker was unavailable. The next morning, G.P. told his mother that Flores had hurt him again and that he was hurting "on the inside." She took G.P. to Dr. Porras on October 2, 2012, but she did not mention G.P.'s reports of abuse. Dr. Porras testified that he observed an area of thinning on the complainant's anus. He diagnosed constipation, of which G.P. had no

prior history, and prescribed a stool softener. G.P.'s mother took him to Dr. Porras again on October 23, 2012, because of continuing rectal pain. Dr. Porras' examination of the complainant revealed a small anal fissure, or tear, and G.P. told Dr. Porras about the abuse, at which point Dr. Porras contacted the relevant authorities. Soon after, Child Protective Services contacted Flores about the allegations, and he eventually left for El Salvador, though he voluntarily returned to the United States after speaking with a Houston police officer about the charge.

The jury heard testimony over two days of trial from nine witnesses, including G.P. himself. Flores contends that the trial testimony of multiple expert and lay witnesses offered direct opinions as to the truthfulness of children generally and G.P. specifically, which is impermissible under Texas law. *See Yount v. State*, 872 S.W.2d 706, 712 (Tex. Crim. App. 1993) (en banc) ("[Texas Rule of Evidence] 702 does not permit an expert to give an opinion that the complainant or class of persons to which the complainant belongs is truthful."). He argues that the following statements of seven witnesses all crossed this line:

*First*, the State asked Dr. Porras if G.P.'s disclosures to another witness were "consistent with" what G.P. had told Dr. Porras during his examination. He replied, "Yes, it was." He also testified that he "had reason to believe that there was some sort of a sexual encounter."

*Second*, the State asked the investigating police officer why it was "important to you as an officer investigating a sexual assault crime" that G.P. was able to provide "sensory details." The officer replied, "Those kind of details are important because they lend to the credibility of the outcry."

*Third*, the State asked a former forensic interviewer at the Children's Assessment Center why it was "important to you as a forensic interviewer" that G.P. was able to provide "sensory details." She responded, "Just adds

validity to what the child has experienced. But also . . . it would be difficult to describe something that is memorized as opposed to having a sensory [*sic*] attached to it." The State then asked her whether G.P. was consistent in his telling of the abuse, to which she responded, "Yes."

*Fourth*, the State asked several questions to a staff psychologist at the Children's Assessment Center. When asked whether there was "any specific type of emotion you would expect to see with a kid to think that you should be able to believe their word," she responded, "No. I've seen all sorts of emotions from kids on the stand." When asked to list "some factors that would be important to you to determine reliability or validity of the disclosure" by children, she answered, "[T]hings that are of importance would be sensory details. If a child can describe what they felt, what they smelled, what they heard, what they saw, things of that nature, then you don't really need the context of the importance of the sexual act to describe that." She also testified,

> Children can lie about a lot of things in their lives, but sexual abuse is not typically one of them. It is one of the most shameful, embarrassing things for a child to talk about. It's not something that would ever be chosen as a form of lying just for fun. It's not a fun experience for children. And oftentimes, their lives significantly change in a negative way.

When asked whether "kids know how to lie about things that they don't have knowledge of, such as sex," she responded,

> No. . . . A child to make up something that they have no knowledge of—because a child that young shouldn't know anything about that. So, it wouldn't make sense that they'd even be able to conjure up an incident, you know, such as sexual abuse to come up with something to lie about.

No. 21-20579

And when asked "if a kid doesn't know what anal sex is or anal penetration, . . . it's not within his wheelhouse to even try to make something up about it, is that what you're saying," she said, "Yes."

*Fifth*, the State asked G.P.'s psychotherapist at the Children's Assessment Center whether G.P.'s actions in "play therapy" were "the kinds of things that five, six year olds come in and just fake to go through the motions." She responded, "No. Absolutely he seemed very authentic."

*Sixth*, the State asked G.P.'s mother whether the statements she heard G.P. make to his father, to his mother's friend, and to Dr. Porras were "consistent with" what G.P. had told her. Each time, she responded, "Yes." She also testified that she "believed the words of the child because he was only four years old. And the words that he was saying to [her] were terrible."

*Seventh*, the State asked Flores whether G.P. "has been consistent about the type of sexual abuse with every single witness that has testified here." He responded, "Yes, I've heard that he's always said the same thing."

Flores' trial counsel did not object to any of this testimony. However, he objected in other instances to testimony that he argued impermissibly opined on G.P.'s credibility. Sometimes these objections were sustained, and other times they were overruled.

On August 20, 2015, the jury found Flores guilty of aggravated sexual assault of a child under the age of six, and he was sentenced to forty-five years' imprisonment.

**B.**

Flores unsuccessfully appealed his sentence and then filed a state application for a writ of habeas corpus. He claimed that his trial counsel had unconstitutionally deprived him of effective assistance by, *inter alia*, failing

to object to inadmissible expert and lay testimony concerning truthfulness and to jury instructions that did not require a unanimous verdict for conviction. The state habeas trial court entered recommended findings of fact and conclusions of law regarding this claim, finding that trial counsel's failure to object to witness testimony on truthfulness was not deficient, as it was part of his trial strategy, and that Flores was not prejudiced by his trial counsel's performance; however, the trial court recommended that habeas relief be granted because trial counsel did not object to the jury instruction concerning unanimity.

The Texas Court of Criminal Appeals ("TCCA") nonetheless denied state habeas relief in a written order. Regarding the jury instructions, the TCCA stated that the trial court incorrectly analyzed the case "under the appellate standard of review for jury charge issues rather than the *Strickland* standard." More generally, the TCCA ruled that Flores had "not satisfied the prejudice component of his ineffective assistance of trial counsel claim."

Flores subsequently filed a federal habeas petition in the Southern District of Texas that listed four grounds for relief, including his claim that trial counsel repeatedly failed to object to inadmissible testimony concerning truthfulness. Applying the Antiterrorism and Effective Death Penalty Act's ("AEDPA") deferential standard of review, the district court denied his petition in a summary judgment. Regarding Flores' claim concerning witness testimony, the court determined that "trial counsel set forth a thorough explanation of his actions, his reasons for those actions, and how the actions fit his trial strategies." Though this strategy was ultimately unsuccessful, the court concluded that such assistance was not unconstitutionally ineffective. The district court also denied Flores a certificate of appealability ("COA").

Flores then motioned this court for a COA with respect to two of his habeas claims: his claim that trial counsel failed to object to inadmissible

testimony concerning truthfulness, and his claim that trial counsel failed to object to jury instructions that did not require a unanimous verdict. This court granted the motion in part, granting Flores a COA concerning his claim that "his trial counsel was ineffective for failing to object to improper expert and lay testimony commenting on the victim's truthfulness."

## II.

Because the district court denied Flores' habeas petition in a summary judgment, we review the district court's factual and legal conclusions *de novo*. *Guy v. Cockrell*, 343 F.3d 348, 351 (5th Cir. 2003).

The parties agree that Flores' claim is subject to the deferential standard set out in AEDPA because it was adjudicated by Texas courts on the merits. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Under that standard, a federal court may not grant habeas corpus relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under AEDPA, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A state court's findings of fact must be presumed correct unless the petitioner rebuts

the presumption "by clear and convincing evidence," 28 U.S.C. § 2254(e)(1), and its application of clearly established law is not unreasonable unless it is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

### III.

Flores contends that the TCCA erroneously applied *Strickland v. Washington*, 466 U.S. 668 (1984), which provides the benchmark for constitutionally ineffective assistance of counsel, in its denial of his habeas petition. Under *Strickland*, Flores must satisfy a two-part test and show that (1) "his counsel provided deficient assistance," and (2) "there was prejudice as a result." *Richter*, 562 U.S. at 104; *see also Strickland*, 466 U.S. at 687.

We may review these prongs in either order, and a failure to satisfy one part of the test dooms the entire claim. *See Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990) ("[T]he *Strickland* decision does not require us to analyze these criteria in any particular order; if we can dispose of this case on the prejudice prong the *Strickland* Court urged that we do so."). Concluding that Flores cannot satisfy the prejudice prong under its onerous standard of review, we do not reach the deficiency prong of the test.

### A.

To establish prejudice under *Strickland*, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also id.* ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). But Flores must show more, because under AEDPA our review of a state court's application of *Strickland* is "doubly" deferential. *See Richter*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *Anaya v. Lumpkin*, 976 F.3d

545, 554 (5th Cir. 2020) (viewing the prejudice prong "with the requisite double deference").

To satisfy this doubly deferential standard of review, we must be convinced that "every reasonable jurist would conclude that it is reasonabl[y] likely" that Flores would have been acquitted had his trial counsel objected to the contested testimony. *Adekeye v. Davis*, 938 F.3d 678, 684 (5th Cir. 2019); *see also Fears v. Lumpkin*, No. 20-40563, 2022 WL 3755783, at *5 (5th Cir. Aug. 30, 2022). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Adekeye*, 938 F.3d at 684 (quoting *Richter*, 562 U.S. at 102).

## B.

Flores argues that his trial was a contest of credibility—his credibility against the credibility of G.P.—and that there is a reasonable probability that, without the inclusion of inadmissible credibility testimony by lay and expert witnesses, the result of the proceedings would have been different. He thinks that "[t]rial counsel's repeated failure to properly object to this testimony had the effect of repeatedly hammering home for the jury the 'most important piece of evidence to know [is] if that child is being truthful.'"

But as this court has previously explained, such testimony is arguably cumulative evidence of G.P.'s credibility—and therefore harmless—where the jury had other opportunities to assess the complainant's credibility itself. *Fears*, 2022 WL 3755783, at *6. Here, the jury heard from G.P. directly, providing it with the opportunity to evaluate his demeanor in court firsthand and to compare his trial testimony to the earlier statements other witnesses alleged that he made. Because "[o]ne rationally could conclude that the bolstering evidence gave the jury nothing it didn't already have," *id.*, whether trial counsel's supposed error prejudiced Flores is debatable by reasonable jurists.

Furthermore, the jury was provided with more than enough evidence to convict Flores without the challenged testimony, and we are unable to say that every reasonable jurist would believe it reasonably likely that Flores would have been acquitted if trial counsel had objected. Under Texas law, a sexual assault conviction "is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred." Tex. Code Crim. Proc. Ann. art. 38.07(a). G.P. testified at trial and told multiple people—including his mother and his pediatrician—about the assaults well within one year of their taking place. The jury could have convicted Flores on this testimony alone, which is detrimental to Flores' prejudice argument.

The jury was presented with other evidence supporting Flores' conviction as well. Dr. Porras testified at length about his multiple examinations of G.P., and the jury was presented with G.P.'s medical records from these visits, which together support the jury's guilty verdict. The medical records and testimony show that in early October 2012, Dr. Porras observed thinning of a portion of G.P.'s rectum, which could have resulted from constipation or penetration. He diagnosed G.P. with constipation and prescribed Miralax, a stool softener, in addition to a robust treatment plan. G.P. returned later that month, at which point Dr. Porras observed a tear in G.P.'s anal lining, which, for Dr. Porras, "raise[d] a big red flag that this is actually a case of potential sexual abuse." This led to Dr. Porras' diagnosis of sexual abuse. In December 2012, Dr. Porras again treated G.P. and observed "complaints related to genitalia and anus" that he suspected were "related to psychological trauma of the incident." In addition to the medical evidence, the jury could have considered Flores' flight to El Salvador after finding out that there were sexual abuse allegations against him as an acknowledgment of wrongdoing.

Ultimately, we are unconvinced that every reasonable jurist would believe it reasonably likely that Flores would have been acquitted absent the challenged testimony. AEDPA's demanding standard of review thus requires us to defer to the TCCA's decision, and we AFFIRM the judgment of the district court.